UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

SAADIO YUSSUF ISSACK and
ABDULKADIR KHALIF ABDULLE,

        Plaintiffs,

v.

ANTONY BLINKEN, Secretary, U.S.
Department of State; RENA BITTER,
Assistant Secretary, Bureau of Consular
Affairs; and JARED M. YANCEY, Deputy
Chief of Mission, U.S. Embassy, Freetown,
Sierra Leone,

        Defendants.[1]

Case No. 24-CV-4219 (PJS/DTS)

ORDER

---

    Marc Prokosch and Isabelle Plunkett, PROKOSCH LAW LLC, for plaintiffs.

    Emily M. Peterson, U.S. ATTORNEY'S OFFICE, for defendants.

    Plaintiffs Saadio Issack and her husband, Abdulkadir Abdulle, brought this action to compel the U.S. Secretary of State, the Assistant Secretary of the Bureau of Consular Affairs, and the Deputy Chief of Mission at the U.S. Embassy in Sierra Leone (collectively, "the State Department") to render a decision on Abdulle's application for an immigrant visa. The crux of the dispute is whether the State Department's "refusal" of Abdulle's visa application—pending further "administrative processing"—was an

---

[1] Under Fed. R. Civ. P. 25(d), Marco Rubio is substituted for Antony Blinken as a defendant. The Court is unsure which other named officials should be substituted.

adjudication for purposes of the Administrative Procedure Act ("APA").[2] This matter is before the Court on the State Department's motion to dismiss the complaint for failure to state a claim. For the reasons that follow, the motion is granted.

## I.  BACKGROUND

### A. Immigrant-Visa Process

The family-based immigration process is governed by the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*. *See Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 45 (2014). Under the INA, a U.S. citizen can petition U.S. Citizenship and Immigration Services ("USCIS") to classify a non-citizen as eligible for a visa based on the non-citizen's familial relationship with the petitioning citizen. 8 U.S.C. § 1154(a)(1)(A)(i). If the citizen's petition is approved, USCIS sends the petition to the Department of State's National Visa Center ("NVC") for processing.[3] After receiving the approved petition, NVC reaches out to the non-citizen who is the beneficiary of the petition (the "applicant") with instructions about how to file an application for an immigrant visa. 9 Foreign Affairs Manual ("FAM") § 504.1-2(a)(1).

---

[2]Plaintiffs have conceded that their claim under the Mandamus Act is duplicative of their APA claim. Pls.' Br. at 1 n.1, ECF No. 12.

[3]NVC Processing, Step 2, U.S. Dep't of State—Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html (last visited Aug. 28, 2025).

Once the applicant submits the required forms, fees, and supporting documents, the visa application is considered "documentarily complete." 8 U.S.C. § 1202(a); 9 FAM § 504.1-2(b)(2). The NVC then contacts the appropriate U.S. embassy or consulate to schedule an interview of the applicant. 22 C.F.R. § 42.62; 9 FAM § 504.1-2(d). After the applicant has completed the interview, his or her application is considered officially filed. 22 C.F.R. § 40.1(l)(2); 9 FAM § 504.1-3(a). "When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations," the consular officer must either issue or refuse the visa. 22 C.F.R. § 42.81(a). The applicant bears the burden of establishing eligibility for the visa. 8 U.S.C. § 1361.

### B. Factual Allegations

Issack is a U.S. citizen and a resident of Minnesota. Compl. ¶ 4, ECF No. 1. Issack's husband, Abdulle, is a citizen and resident of Sierra Leone. *Id.* ¶ 5. On October 11, 2021, Issack filed a petition to classify Abdulle as eligible for an immigrant visa based on their marriage. *Id.* ¶ 9. On July 30, 2022, USCIS confirmed the requisite familial relationship and sent the approved petition to the NVC for processing. *Id.* ¶ 10.

The U.S. Embassy in Freetown, Sierra Leone scheduled Abdulle for a consular interview on December 15, 2023. *Id.* ¶¶ 12–14. At the conclusion of the December 15

interview, Abdulle's application was "refused" pursuant to 8 U.S.C. § 1201(g)[4] and then immediately placed in administrative processing. *Id.* ¶¶ 14, 19. The consular officer did not ask Abdulle to take any additional action at that point, but a few weeks later, Abdulle was asked to bring his passport to the embassy, which he did on February 20, 2024. *Id.* ¶ 17. Since January 2024, Issack and Abdulle have repeatedly requested updates on Abdulle's visa application from the State Department, and they have repeatedly been told that his application remains in administrative processing. *Id.* ¶¶ 15–29.

Abdulle suffers from a number of health challenges that allegedly have been exacerbated by the State Department's delay in adjudicating his visa application. *Id.* ¶¶ 20, 30. On November 18, 2024—which was about 11 months after Abdulle's consular interview—Issack and Abdulle initiated this lawsuit seeking to compel the State Department to finish adjudicating his application. ECF No. 1.

## II. ANALYSIS

### A. Standard of Review

In ruling on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiffs' favor. *Perez v. Does 1–10*, 931 F.3d 641,

---

[4]Section 221(g) of the INA.

646 (8th Cir. 2019). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the court may consider materials that are necessarily embraced by the complaint, as well as matters of public record that do not contradict the complaint, without converting the motion into one for summary judgment. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

### B. "Final" Decision

Plaintiffs seek to compel an adjudication of Abdulle's visa application. Under the APA, an agency must "proceed to conclude a matter presented to it" within a "reasonable time," 5 U.S.C. § 555(b), and a court may "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1). But "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted). Put differently, a court cannot compel an agency to perform a discretionary act. *Id.*

The parties agree that the State Department has a nondiscretionary duty to adjudicate Abdulle's visa application. The parties likewise agree that, after the State Department adjudicates Abdulle's visa application, the consular non-reviewability doctrine will preclude courts from second-guessing the State Department's decision to issue or refuse a visa to Abdulle. What the parties dispute is whether there has in fact been an adjudication of Abdulle's application.

Plaintiffs argue that the decision of the consular officer to refuse Abdulle's visa application immediately after the December 2023 interview was not a "final" decision on the visa application, but rather was a "temporary measure" designed to buy the State Department additional time to review the application before making a final decision. In response, the State Department contends that it fully discharged its duty to adjudicate Abdulle's application when the consular officer refused the application at the end of the December 2023 interview. According to the State Department, the additional administrative processing following the refusal was a discretionary act that the State Department had no duty to undertake, and thus the Court cannot compel its completion.

Federal courts are divided on the question of whether an 8 U.S.C. § 1201(g) refusal by a consular officer quickly followed by placement of the purportedly refused application in administrative processing discharges the State Department's duty to

adjudicate a visa application. *Compare Hassan v. Dillard*, 758 F. Supp. 3d 973, 980–81 (D. Minn. 2024) (holding that an initial post-interview refusal followed by administrative processing did not discharge duty to adjudicate the visa application); *Mobayen v. Blinken*, 780 F. Supp. 3d 969, 983 (C.D. Cal. 2025) (same); *with Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 103 (D.D.C. 2024) (holding that the initial post-interview refusal was all that was required under the law, and so the additional administrative processing was discretionary); *Taha v. Blinken*, 765 F. Supp. 3d 91, 96 (D. Mass. 2025) (same). This Court agrees with those decisions that have found that there has been no final adjudication of a visa application when the consular official refuses the visa under § 1201(g) but then immediately places the application in administrative processing.

Everyone agrees that a consular officer has a non-discretionary duty to issue or refuse a visa after the applicant has completed the consular interview. 22 C.F.R. § 42.81(a). And that decision (at least for purposes of this case) must be based on the merits—that is, on whether the applicant is in fact eligible for the visa. *Id.*; 8 U.S.C. § 1201(g) (directing a consular officer to refuse a visa when the officer "knows or has reason to believe" or "it appears" that the applicant is "ineligible to receive a visa"); § 1182(a) ("[A]liens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States[.]"). In this case, the allegations of the complaint give ample reason to believe that the consular official's

§ 1201(g) refusal of Abdulle's application was not based on a finding that Abdulle was ineligible for the visa, but instead based on a determination by the consular official that he needed more time to determine if Abdulle was eligible for the visa.

As noted, a consular official is legally required to issue or refuse a visa *at some point* after interviewing the applicant, 22 C.F.R. § 42.81(a), but the law does not impose a specific deadline on the consular official. For reasons that are unclear, however, the State Department's Foreign Affairs Manual ("FAM")—which is essentially an employee handbook that does not have the force of law[5]—requires the consular officer to render a decision "by the end of the working day on which the application is made." 9 FAM § 504.1-3(i)(1). As a result, if the consular officer cannot make a decision by the end of the day, the FAM directs him to refuse the visa. *Id*. ("[A]ny applicant to whom a visa is not issued by the end of the working day on which the application is made . . . must be found ineligible[.]").

So, for example, if a consular interview is completed at 4:30 pm, and if the end of the working day is 5:00 pm, the consular official has 30 minutes to make a decision

---

[5]The FAM is not a source of law, and the parties cannot cite—and the Court cannot find—any binding authority that requires a same-working-day adjudication. ECF No. 17; 22 C.F.R. § 5.5 ("The [State] Department articulates official guidance, including procedures and policies, on matters relating to Department management and personnel in the Foreign Affairs Manual (FAM) and the Foreign Affairs Handbook (FAH) series."); *see, e.g.*, 9 FAM 504.1-3(i)(2) ("You should convey visa refusals in a sympathetic but firm manner.").

about whether to issue the visa. If he needs more than 30 minutes to make that decision—because, for example, he needs to follow up on information that he learned during the course of the interview—the only way that he can buy that additional time is to declare the applicant ineligible (even though the consular official has not yet *decided* whether the applicant is ineligible), refuse the application, and then immediately place the application in administrative processing.

The State Department labels such a decision as a "refusal," but the decision appears in substance to be a *deferral* of a decision—a means of complying with the FAM's self-imposed end-of-the-working-day deadline, while gaining additional time to make a decision about whether the applicant is in fact eligible for the visa. This type of pro forma refusal followed by immediate placement in administrative processing is not "the consummation of the agency's decisionmaking process." *See Bennett v. Spear*, 520 U.S. 154, 178 (1997) (cleaned up) (describing conditions for an agency action to be considered "final").

The factual allegations of the complaint—which the Court must treat as true—lend support to plaintiffs' allegation that the refusal of Abdulle's application was not a decision on his eligibility for a visa, but instead a deferral of that decision. For example, the consular officer placed Abdulle's application in administrative processing immediately following the interview; Abdulle did not ask to be placed in administrative

processing, nor did the consular officer or anyone else ask Abdulle to submit additional documents or take any additional action. Moreover, in response to one of Abdulle's inquiries about the status of his application, the embassy instructed Abdulle that he "will be contacted" once his case was "ready." Compl. ¶ 23. That hardly suggests that a decision on the merits had already been made. Further, although Abdulle's application is listed as "refused" on the State Department's online portal, the portal goes on to state that "[i]f . . . your case was *refused for administrative processing*, . . . [y]ou will receive another adjudication once such processing is complete."[6]

As is apparent, the State Department's own guidance to visa applicants distinguishes applications that are refused on the merits (i.e., refused because the applicant is not eligible for a visa) and applications that are "refused for administrative processing"—that is, refused so the State Department can do more work on the application and then determine whether the applicant is eligible for a visa. The applications placed in administrative processing are therefore not in any meaningful sense "refused." The State Department itself says that an adjudication of such applications "will" be forthcoming.

---

[6] *See* CEAC Visa Status Check, U.S. Dep't of State, https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited Aug. 28, 2025) (emphasis added).

The APA demands that the State Department "proceed to conclude a matter presented to it"—such as Abdulle's visa application—within a "reasonable time." 5 U.S.C. § 555(b).  The State Department cannot evade its legal responsibilities by labeling a pending application as "refused for administrative processing," claiming that the matter as been "concluded" for purposes of the APA, and then continuing to "process" the application before making an actual decision on whether the applicant is eligible for a visa.  Sanctioning such a process would render § 555(b) a nullity while elevating form over substance and fiction over reality.

The State Department argues that there is no legal basis for requiring a decision to be "final" or prohibiting reconsideration of an "officially refused" visa, primarily relying on *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam) (unpublished).  There are several problems with the State Department's argument.  First, D.C. Circuit decisions are not binding on this Court, and because the panel in *Karimova* expressly declined to publish its decision, *id.* at *1, the decision is not even binding within the D.C. Circuit.  D.C. Cir. R. 36(e)(2).  Second, *Karimova* relies extensively on the FAM (which does not have the force of law) to define the scope of the State Department's duty to adjudicate visa applications, rather than on the statutes and regulations governing the visa-application process (which do have the force of law).  *See Karimova*, 2024 WL 3517852 at *1–2.

Finally, the State Department seems to misunderstand Abdulle's demand for a "final" adjudication. Abdulle does not seek "finality" in the sense that he is asking for a decision that cannot be reconsidered by the State Department in the future. Instead, Abdulle seeks an "actual," "real," or "genuine" determination of eligibility—i.e., a determination made after the "final" step in the State Department's decisionmaking process is complete—as opposed to an immediate, sham refusal that allows a consular officer to comply with a deadline imposed by an employee handbook while buying the State Department unlimited time to determine whether Abdulle is in fact eligible for a visa. The State Department may of course reconsider a decision about whether an applicant is eligible for a visa, but for there to be a reconsideration of such a decision, there first must *be* such a decision.

For these reasons, the Court concludes that the complaint has plausibly pleaded that the State Department has not yet discharged its duty under the INA to adjudicate Abdulle's visa application.

## C.  Unreasonable Delay

The State Department next argues that the complaint should be dismissed because its delay in making a decision on Abdulle's application is reasonable. To evaluate the reasonableness of a delay, courts employ a six-factor test. *Irshad v. Johnson*, 754 F.3d 604, 607–08 (8th Cir. 2014) (citing *Telecomm. Rsch. & Action Ctr. v. FCC*, 750 F.2d

70, 80 (D.C. Cir. 1984) [hereinafter "*TRAC*"]).  These so-called "*TRAC*" factors are meant to offer useful guidance, but are not exhaustive:

> (1) the time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*TRAC*, 750 F.2d at 80 (internal citations omitted).

As an initial matter, plaintiffs argue that evaluation of the *TRAC* factors is premature at the motion-to-dismiss stage.  *See Hassan*, 758 F. Supp. 3d at 983–84 (holding *TRAC* analysis inappropriate at the motion-to-dismiss stage).  Plaintiffs are incorrect.  The application of the *TRAC* factors is concededly a fact-intensive inquiry, but a plaintiff nevertheless bears the burden of *pleading* sufficient facts to render her claim of unreasonable delay "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ghannad-Rezaie v. Laitinen*, 757 F. Supp. 3d 148, 154 (D. Mass. 2024) (holding *TRAC* analysis proper and dismissing under Fed. R. Civ. P. 12(b)(6)).

The first two *TRAC* factors strongly favor the State Department. The first factor asks whether the agency's time to make a decision is "governed by a rule of reason," and the second factor asks whether Congress has established a timetable that "may supply content for th[at] rule of reason." *TRAC*, 750 F.2d at 80. In short, the first two factors look for a rationale behind the pace of application processing. The parties agree that Congress has supplied no timetable or other indication of expected speed to process applications. Instead, Congress has given the State Department "an especially wide degree of deference" to decide immigrant-visa applications. *Yaghoubnezhad*, 734 F. Supp. 3d at 105.

Plaintiffs argue that the first factor favors a finding of unreasonable delay because the State Department has failed to provide a "rule of reason" to explain the delay in processing Abdulle's application. But this gets the burden backwards. Plaintiffs have the burden of alleging facts that are sufficient to make plausible their claim that *no* "rule of reason" governs the time that the State Department is taking to render a decision.

Here, Abdulle's application had been in administrative processing for about 11 months at the time the complaint was filed, meaning that the State Department now has been working on the application for about 20 months. That is simply not long enough, absent other facts, to support a plausible claim of unreasonable delay. *See*

*Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) ("With no set timeline, the Court looks to case law for guidance."). Other courts have regularly found a delay of 20 months—and often a delay of much longer than 20 months—is not unreasonable. *See, e.g., Yaghoubnezhad*, 734 F. Supp. 3d at 105 (holding 22 months in administrative processing was not unreasonable delay); *Hassan v. Bitter*, 748 F. Supp. 3d 722, 754 (D. Neb. 2024) (holding 24-month delay in scheduling consular interview was not unreasonable); *Dastagir*, 557 F. Supp. 3d at 165 (holding 29 months in administrative processing was not unreasonable); *Irshad*, 754 F.3d at 608 (holding 5-year delay in adjudicating adjustment-of-status application was not unreasonable); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (holding ~24-month delay in processing foreign adoption petitions not unreasonable).

Plaintiffs also assert in their brief that the State Department has shown indifference to Abdulle's application and has not made a good-faith effort to complete its processing. But that is not true. The complaint alleges that Abdulle was interviewed and that, since his interview, the State Department has taken additional steps to process Abdulle's application by requesting that he bring his passport to the Embassy. Compl. ¶ 17. The relatively short period of time in which Abdulle's application has been in administrative processing, combined with the allegation that the State Department has

-15-

taken affirmative steps to process the application, both undermine plaintiffs' contention that there has been an unreasonable delay.

The remaining factors are largely a wash. The third and fifth factors—which consider the "interests prejudiced by delay"—favor Abdulle. *TRAC*, 750 F.2d at 80. The delay in processing Abdulle's application has no doubt caused much stress for Abdulle and his family, who are anxious to reunite in the U.S. Abdulle also alleges that the delay has exacerbated some of his medical conditions. Although the Court sympathizes, Abdulle's interests in timely adjudication are similar to those shared by many immigrant-visa applicants.

In addition, the two factors that favor Abdulle are balanced out by the fourth factor, which considers "the effect of expediting delayed action on agency activities of a higher or competing priority." *Id.* Abdulle is one of many thousands of people seeking an immediate-relative immigrant visa. Ordering the State Department to adjudicate his application would reshuffle the queue, placing Abdulle at its head, in front of other applicants who have waited as long as or longer than Abdulle. *See Dastagir*, 557 F. Supp. 3d at 167 ("An order requiring adjudication of her visa application necessarily reshuffles the queue of other applicants also waiting for adjudication of their cases. Dastagir offers no reason why she should have 'super-priority' over them."). Abdulle has not alleged that his application has been treated differently from other applications,

-16-

nor has he alleged other facts that would entitle him to jump the line. Even if he had, the State Department—not Abdulle or this Court—is best positioned to decide which applications should be given priority. *Id.*

As for the sixth factor, there is no plausible allegation of any impropriety in the delay in processing Abdulle's application. Thus, the *TRAC* factors militate against a finding of unreasonable delay in the processing of Abdulle's application. Unfortunately, the immigration process just takes a lot of time, as frustrating as that is for those seeking visas.

In sum, the Court holds that (1) the State Department has not yet discharged its duty to adjudicate Abdulle's visa application, but (2) plaintiffs have not pleaded a plausible claim of unreasonable delay. The complaint is therefore dismissed.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss [ECF No. 5] is GRANTED.

2. The complaint [ECF No. 1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 28, 2025     /s/ Patrick J. Schiltz
                           Patrick J. Schiltz, Chief Judge
                           United States District Court